[Civ. No. 19103. Fourth Dist., Div. Two. July 21, 1978.]

JOHN MURPHY et al., Plaintiffs and Appellants, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Portigal & Hammerton, James R. Hammerton and Mary L. Kading for Plaintiffs and Appellants.

Berger, Berger, Kahn & Shafton, Berger, Kahn, Shafton & Moss, Anthony E. Shafton and Craig S. Simon for Defendant and Respondent.

## OPINION

KAUFMAN, Acting P. J.—Defendant Allstate Insurance Company (Allstate or defendant) was granted summary judgment. Plaintiffs John and Maude Murphy (plaintiffs) appeal.

Plaintiffs filed no declarations in opposition to defendant's motion for summary judgment. However, defendant's motion was based on a number of declarations, several of which referred to and incorporated other documents, including plaintiffs' answers to interrogatories and a 24-page handwritten letter by Mr. Murphy to an Allstate representative setting forth in great detail many of the facts on which plaintiffs' claims against Allstate are based.

■ It is fundamental that the party moving for summary judgment has the burden of showing by declarations or affidavits setting forth facts admissible as evidence in a trial that the claims or defenses of the adverse party are entirely without merit on any legal theory and that if the moving party's showing is insufficient, the adverse party is not required to demonstrate the validity of his claims or defenses or even to file counterdeclarations or counteraffidavits. (Code Civ. Proc., § 437c; *Rowland* v. *Christian,* 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Swaffield* v. *Universal Ecsco Corp.,* 271 Cal.App.2d 147, 171 [76 Cal.Rptr. 680].) In determining whether the moving party's papers show there is no triable issue as to any material fact, the court must consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible therefrom. (Code Civ. Proc., § 437c.)

Both the circumstances and the statements of the trial court establish that summary judgment was granted Allstate on the basis of two statutes of limitations. If plaintiffs' claims are not thus barred, there exist literally dozens of factual issues precluding summary judgment.

Many of the pertinent facts will appear in our discussion of the issues. It is appropriate at the outset, however, to state those facts necessary to comprehension of the contentions.

Plaintiffs' home and household furniture and furnishings were insured under a homeowner's policy of insurance issued by Allstate. On January 11, 1973, the home and certain of the household furniture and furnishings were substantially damaged by fire. Almost immediately arrangements were made with several individuals and firms for the preservation and

repair of the damaged home and household furniture and furnishings. Among these persons and firms were Golden West Construction Company, Robert Rosas, and, perhaps, F. J. Hyland. The nature of the arrangements thus made, who made them, the circumstances surrounding them and the legal rights and duties flowing from them appear to be matters in dispute. Plaintiffs apparently signed some authorization forms. They allege, however, that Allstate represented it was hiring these persons and firms and that the authorization forms were required to be signed by plaintiffs so that permits could be obtained. It would appear that plaintiffs' first acquaintance with these persons and firms came through representatives of Allstate, and plaintiffs allege that Allstate represented that these persons and firms were licensed, competent and qualified to do the work for which they were engaged. In any event, Golden West Construction Company was in fact not licensed and neither it nor the other persons and firms were competent or qualified to do the work for which they were engaged, and the work of preserving, repairing and restoring the damaged property undertaken by them was so badly done that both the home and the furniture and the furnishings were further damaged.[1]

In one cause of action it is alleged that this shoddy work was caused in part by Allstate's practice of arbitrarily reducing the amounts bid by these persons and firms as the reasonable cost of the restoration and repair work.

Meanwhile, plaintiffs and Allstate were unable to agree upon the value of the property damaged and the amount of the loss, so Allstate invoked the appraisal procedure provided for in the policy pursuant to which each party was required to appoint an appraiser to evaluate the loss who, in turn, collectively, would select an umpire to whom differences between the appraisers would be submitted. On September 11, 1973, pursuant to the appraisal procedure, the amount of the fire loss was fixed at

---

[1]It is specifically alleged in the first amended complaint that Golden West Construction Company allowed the roof of plaintiff's home to remain open to the elements for a substantial period of time during which both the home and contents were further damaged by the elements and that its reconstruction work was done in such unworkmanlike manner that plaintiffs were required to employ others to attempt to correct Golden West's work. It is also specifically alleged that Rosas removed wet carpeting from plaintiff's home and left it in a rolled and folded condition so that it had no opportunity to dry; that the carpeting was returned to plaintiffs in a damp and moldy condition so that plaintiffs' home was caused to smell and was infested by insects breeding in the damp and moldy carpeting; that plaintiffs' drapes were returned dirty and wrinkled and still smelling of smoke; and that numerous items of personal property and home furnishings were either not returned at all or were returned in worse condition than when they were removed by Rosas.

$20,569.42. On September 27, 1973, Allstate petitioned the superior court for confirmation of the appraisal "award." The same day Allstate filed in the superior court an interpleader action naming as defendants the Murphys, Prudential Insurance Company of America, Golden West Construction Company, and F. J. Hyland, alleging the amount payable as a result of the fire was $21,481.02 of which sum all but $8,163.41 had been paid to the Murphys and that the defendants in interpleader made conflicting claims to the remaining $8,163.41.

In the interpleader action the Murphys denied they had received all of the loss payable except $8,163.41 and asserted that Golden West and F. J. Hyland had no legitimate claim against any part of the loss payable, but that in fact they were Allstate's agents and that their claims were a result of their collusion with Allstate to deprive the Murphys of the moneys due them on account of the fire loss. F. J. Hyland filed a cross-complaint in the interpleader action claiming in excess of $10,000 for work done in repairing and restoring the Murphys' home. At some date not disclosed by the record, F. J. Hyland also filed an independent action against the Murphys based on the same claim.

On October 18, 1973, hearing was had on Allstate's application for confirmation of the appraisal award at the conclusion of which the court indicated its intention to confirm the award. However, because of the pending interpleader action and the dispute as to how much had been paid by Allstate and who was entitled to what further payment, it was not until April 4, 1975, that judgment was entered confirming the appraisal award. On April 29, 1975, apparently at the instigation of Allstate, the court stayed execution on the judgment confirming the award pending disposition of the interpleader action.

In the interpleader action Allstate's petition for discharge and an award of costs and attorney fees was denied without prejudice on January 14, 1975. In mid-April 1975, in the independent action by F. J. Hyland against the Murphys, the Murphys recovered judgment because F. J. Hyland was not a licensed contractor. On May 28, 1975, F. J. Hyland filed a request for dismissal of his cross-complaint in the interpleader action. Finally, on July 20, 1976, an order was made in the interpleader action for payment of $8,163.41 by Allstate to the Murphys without prejudice to their rights in the instant action which by then was pending.

The instant action was filed January 10, 1975. The first amended complaint purports to state five causes of action for fraud, conspiracy to

defraud, bad faith and intentional infliction of emotional distress, and seeks both compensatory and punitive damages. On May 9, 1977, Allstate filed a motion for summary judgment or in the alternative for specification that certain issues are without substantial controversy. Its only arguable contention for full summary judgment was that plaintiffs' action was barred by a policy provision based on Insurance Code sections 2070 and 2071 requiring suit on the policy to be commenced within 12 months after the inception of the loss. It also contended that any claim for emotional distress or personal injury was barred by the one-year statute of limitations specified in Code of Civil Procedure section 340, subdivision 3. In the alternative, it requested the court to specify as being without substantial controversy all issues in each of the alleged causes of action except that for intentional infliction of emotional distress; that the appraisal award confirmed by the superior court "is valid and binding"; that the total amount of loss compensable under the insurance policy is $20,569.42; and that the appraisal award confirmed by the superior court "is not subject to impeachment or attack, and that the proceedings were conducted in accordance with law and are valid in all respects."

As previously indicated, the trial court granted the motion for full summary judgment on the basis of the statutes of limitations. It had no occasion, of course, to reach Allstate's request for the specification of issues without substantial controversy.

### Applicability of Insurance Code Section 2071

As required by Insurance Code section 2070, the homeowner's policy included the standard provision set forth in Insurance Code section 2071: "No suit or action *on this policy* for the recovery of *any claim* shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced *within 12 months next after inception of the loss.*" (Italics added.)

Emphasizing the words "any claim," Allstate maintains plaintiffs' action is barred because it was not commenced within 12 months after the inception of the loss. However, the words "any claim" taken together with the words "on this policy" and "within 12 months next after inception of the loss" plainly refer to a claim for a loss covered by the policy. This provision has no applicability to an action unless it is an action on the policy. (See *Stockton etc. Works* v. *Ins. Co.*, 98 Cal. 557, 569 [33 P. 633].)

The *Stockton* case is instructive. The plaintiff insured suffered a fire loss. The amount of the loss was disputed and the parties submitted the

question to appraisers who fixed the amount of the loss. Plaintiff sued alleging the amount of the loss had been thus fixed and that the defendant had agreed to pay a proportionate amount of the total loss in settlement of the claim. In its discussion the court said: "The distinction between . . . an action upon an award fixing the liability of an insurer under an insurance contract, and a cause of action upon a policy of insurance, is marked and important, not only by reason of the difference in the facts required to be shown in order to maintain the different actions, but also because of the fact that in an action like this the defendant is cut off from defenses which might be interposed to an action upon the policy. 'Where an insurance company, after a loss, has adjusted the claim therefor, and has agreed to pay a certain sum in liquidation of the claim, it cannot in an action setting forth such facts, object that the action was not brought within the time limited in the policy. *In such a case the action is not upon the policy, but upon the agreement to pay.*' " (98 Cal. at p. 569; italics added.)

There is nothing to the contrary in *Harlow* v. *American Equitable Assur. Co.,* 87 Cal.App. 28 [261 P. 499], upon which Allstate relies. That case involved an oral contract of fire insurance in the amount of $10,000. As the result of a fire the covered premises were totally destroyed. The insurer refused to pay the loss and the insured instituted an action to recover the $10,000 more than two years after the fire occurred. The complaint was framed in terms of promissory fraud, i.e., it was alleged the insurer had agreed to pay for loss by fire without any intention of performing its promise. After holding the parties were presumed to have intended the statutorily prescribed standard form policy which at that time contained a provision requiring suit be commenced within 15 months after inception of the loss, the court acknowledged, as did the parties, that an action on the contract of insurance was barred. The court observed, however, that the plaintiff's action was not for breach of the insurance contract but for fraud. It then held no cause of action for fraud was stated and affirmed the trial court's dismissal of the action following sustention of a general demurrer to the complaint. Contrary to Allstate's assertion, however, the court did not hold the action barred by the 15-month limitation period. It held plaintiff had failed to allege any damages proximately caused by the alleged fraud. It said: "[I]t is axiomatic that damages cannot be recovered for a fraud which has caused no damage." It then concluded that the defendant's promise to pay was binding upon it whether fraudulently made or not and that plaintiff's alleged loss of $10,000 was caused not by the promissory fraud of the defendant but by the plaintiff's failure to enforce his rights under the

contract prior to the expiration of the 15-month limitation period. (*Harlow* v. *American Equitable Assur. Co., supra,* 87 Cal.App. at p. 32.) The court nowhere suggested the plaintiff's action was an action on the insurance contract or subject to the statutorily prescribed 15-month limitation period.[2]

 None of plaintiffs' alleged causes of action are actions "on the policy" of insurance. For the most part, the conduct complained of is alleged wrongful conduct of Allstate with respect to the repair and restoration of the damaged property and the employment of persons to do that work and the allegedly unjustified initiation and prosecution by Allstate of the interpleader action with its attendant delay of several years in payment to plaintiffs of even those moneys admittedly owing under the appraisal award. The damages sought are not for any loss covered by the insurance policy but for damage to plaintiffs' home and personal property resulting from the untimely and unworkmanlike efforts of the persons and firms Allstate either employed or caused plaintiffs to employ, for the expenses incurred by plaintiffs in connection with the interpleader action and the suit by F. J. Hyland against plaintiffs allegedly resulting from Allstate's failure to make prompt payment, and for plaintiffs' emotional distress resulting from all of the foregoing.

 The first amended complaint is inartfully drawn. There is a good deal of incorporation by reference of allegations of one cause of action into another, and the allegations are overlapping and repetitious. However, it is not the function of a motion for summary judgment to test the sufficiency of the pleadings. (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 560 [122 P.2d 264]; *U. S. Fidelity & Guar. Co.* v. *Sullivan,* 93 Cal.App.2d 559, 561 [200 P.2d 429].) The first cause of action appears to be based on a theory of fraudulent misrepresentation. It includes allegations of promissory fraud to the effect that Allstate represented its policy as the best insurance available and that it would provide plaintiffs with better coverage for less money than their existing policy and that plaintiffs would be "in good hands with ALLSTATE," whereas in truth and fact Allstate intended to deal with plaintiffs in bad

---

[2]Though the court did not do so, it might well have observed that the loss complained of by the plaintiff was none other than the loss resulting from the fire which the defendant promised to pay in the contract of insurance. In other words, although the suit was brought on the theory of promissory fraud, its objective was to enforce the promise to pay with respect to the very loss covered by the contract of insurance. Thus, even had the *Harlow* court concluded the action for promissory fraud was barred by the statutorily prescribed limitation period, the decision would not be controlling in the case at bench in which the damages sought were not caused by occurrence of any risk insured against and are not something the insurer promised to pay.

faith and to use any methods to avoid paying legitimate claims under the policy.[3] However, the essence of this cause of action is found in the allegations that Allstate represented that Golden West Construction Company and Robert Rosas were licensed, competent and qualified to do the work of repair and restoration, that Allstate was employing Golden West and Rosas to do this work and that the authorization forms plaintiffs were asked to sign were only for the purpose of obtaining permits. The damage alleged is that resulting from the untimely, unworkmanlike and unsatisfactory restoration and repair work. (See fn. 1, and accompanying text, *ante.*) Thus, the conduct complained of occurred subsequent to the fire loss and the damages claimed were not recoverable under the policy. Manifestly, this cause of action is not one "on the policy" of insurance.

The second cause of action is based upon the same allegations of fraudulent misrepresentation just discussed. It is alleged, however, that Allstate and others including Rosas, Golden West Construction Company and F. J. Hyland conspired to defraud plaintiffs by making these misrepresentations. Again, the conduct complained of occurred subsequent to the fire loss; the damages claimed were not recoverable under the insurance policy, and the action is not "on the policy."

The third and fourth causes of action are appropriately discussed together, for in our view, they purport to state one or more causes of action for bad faith, that is, unjustified refusal to pay or prolonged delay in paying legitimate claims under the policy. In both the third and fourth causes of action all of the allegations of fraudulent misrepresentation contained in the first cause of action are incorporated by reference. In the third cause of action it is then alleged that from the date of the fire to the present Allstate "intentionally and in bad faith breached said contract for insurance by conspiring with unlicensed building contractors to perform repairs on the plaintiffs' home and furnishings, and by refusing to pay legitimate claims under said policy of insurance, and by forcing plaintiffs' legitimate claim into appraisal." The next allegation reads: "As a proximate result of said actions on the part of [Allstate], plaintiffs were

---

[3] These allegations are indeed similar to the allegations of promissory fraud in *Harlow* v. *American Equitable Assur. Co., supra,* 87 Cal.App. 28. Here, of course, plaintiffs purport to allege damages resulting from these misrepresentations. If these were the only allegations of fraud in the first cause of action, we would be required to determine whether *Harlow's* proximate cause reasoning would be applicable and controlling, but this cause of action includes other allegations of fraudulent misrepresentation clearly not governed by the reasoning in *Harlow.* Even if plaintiffs could not recover on the basis of these allegations of promissory fraud, evidence of statements attributable to Allstate with respect to its treatment of insureds and its claims practices would be admissible in connection with the bad faith claims.

unable to make payment, or to have necessary repair work completed, and certain defendants instituted foreclosure proceedings against plaintiffs."

The fourth cause of action incorporates by reference the quoted allegation of the third that Allstate. "intentionally and in bad faith breached said contract for insurance," etc. There follow allegations that Allstate induced the appraiser selected by plaintiffs to accept Allstate's figures as to the amount of the fire loss by representing to him that if he would do so, "immediate payment would be forthcoming," but rather than make immediate payment as promised, Allstate instigated an interpleader action for the benefit of its co-conspirators with the result that "said funds have still not been paid to plaintiffs."[4]

Allstate asserts that plaintiffs' bad faith claim is based upon alleged breaches of the implied duty of good faith and fair dealing which arises only because of the contract of insurance between it and plaintiffs and contends, therefore, that a cause of action for bad faith must be deemed to be an action "on the policy." Allstate's assertions are essentially correct; its contention, however, is unsound. ■ First, while it is true that a bad faith claim is predicated upon a breach of the duty of good faith and fair dealing that arises out of the contractual relationship between the parties (e.g., *Murphy* v. *Allstate Ins. Co.,* 17 Cal.3d 937, 940-941 [132 Cal.Rptr. 424, 553 P.2d 584]; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau,* 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744]; *Gruenberg* v. *Aetna Ins. Co.,* 9 Cal.3d 566, 577 [108 Cal.Rptr. 480, 510 P.2d 1032]) and while the implied covenant of good faith and fair dealing is "immanent in the contract" (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 575), the duty of good faith and fair dealing is not strictly a contractual obligation. It is an obligation imposed by law which governs a party to a contract in discharging its contractual responsibilities. As the court explained in *Gruenberg*: "Thus in *Comunale [Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654 (328 P.2d 198, 68 A.L.R.2d 883)] and *Crisci [Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425 (58 Cal.Rptr. 13, 426 P.2d 173) we made it clear that '[l]iability is imposed [on the insurer] not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.' [Citation.] In those two cases, we considered

---

[4]Allstate's contention that the validity of the appraisal award was established by the superior court proceeding to confirm the award and that plaintiff may not now attempt to impeach the award on the grounds of fraud or irregularity is more appropriately considered in conjunction with our discussion of its request for specification of issues without substantial controversy, *infra.*

the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." (9 Cal.3d at pp. 573-574.) (Italics in original deleted.)

Moreover, there is a significant difference between "arising out of the contractual relationship" and "on the policy." In a broad sense, all of plaintiffs' alleged causes of action may be said to "arise out of the contractual relationship" but as we have seen, they are not actions "on the policy." Much of the conduct complained of in the third and fourth causes of action occurred long after the fire loss and related to the repair and restoration of plaintiffs' home and personal property and the employment of persons and firms to do that work, the institution and prosecution of the interpleader action. Here again, the damages claimed were not caused by any risk insured against under the policy and were not recoverable under the policy. We conclude the third and fourth causes of action are not actions "on the policy" and are not barred by the statutorily mandated 12-month limitation provision.

The fifth cause of action is for intentional infliction of emotional distress. Incorporated are the allegations of fraudulent misrepresentation found in the first cause of action and the principal charging allegation of the third cause of action. It is then alleged that Allstate "conspired with unlicensed contractors to rebuild plaintiffs' home and repair or restore plaintiffs' furnishings in an unsatisfactory and unworkmanlike manner for the purpose of saving money for [Allstate]. Said contractors submitted bids to [Allstate] setting forth amounts needed to restore plaintiffs' home and furnishings. Said amounts were arbitrarily reduced by [Allstate]. Due partly to said reductions, [said] contractors did not complete the repairs and restoration, and such repairs and restoration as were attempted were done in an unworkmanlike and unsatisfactory manner. Plaintiffs were

unable and unwilling to pay [said] contractors by reason of refusal of [Allstate] to pay the claim of plaintiffs and by reason of the unsatisfactory and unworkmanlike manner in which repairs were attempted. As a proximate result of the bad faith breach of contract by [Allstate], a foreclosure lien was levied against plaintiffs' home, and plaintiffs were forced to obtain legal counsel and defend a court action."[5]

What we have said with respect to the first four causes of action is equally applicable to the fifth. Manifestly, it is not an action "on the policy" of insurance.

We conclude plaintiffs' action is not barred by the statutorily mandated 12-month limitation period and the court erred in granting Allstate's motion for full summary judgment.

### Emotional Distress—Statute of Limitations

As previously indicated, Allstate contends any claim of plaintiffs for emotional distress or personal injury is barred by the one-year statute of limitations found in Code of Civil Procedure section 340, subdivision 3, relating to actions "for injury to or for the death of one caused by the wrongful act or neglect of another." We have no doubt that that is the statute of limitations applicable to an action for intentional infliction of emotional distress. (*Steen* v. *Whittington,* 9 Cal.App.2d 445, 446-447 [50 P.2d 118]; see *Purcell* v. *Colonial Ins. Co.,* 20 Cal.App.3d 807, 809, 814-815 [97 Cal.Rptr. 874].) However, the limitation period does not commence to run until the cause of action has accrued. (Code Civ. Proc., § 312.)

In the 24-page handwritten letter from Mr. Murphy to an Allstate representative, complaint is made of the emotional distress and upset being suffered by plaintiffs as a result of defendant's conduct in the handling of the claim and the delayed and wholly unsatisfactory work with respect to the repair and restoration of plaintiffs' home and personal property to that time. Allstate contends that letter was received by it approximately August 13, 1973, that plaintiffs' cause of action for emotional distress had accrued at that time, and since the instant action was not filed until January 10, 1975, the right of action for emotional distress is barred. Not so. In the first place, there is a factual dispute as to the date of Mr. Murphy's letter. Apparently the original letter was

---

[5]It is also alleged that Allstate "conspired with the appraiser on the aforementioned appraisal to the detriment of plaintiffs herein." (See fn. 4, *ante.*)

undated. A declaration states the letter was received by Allstate in August 1973. On the letter itself appears a handwritten notation stating, "approx. Aug. 13, 1973 letter delivered." There is no explanation as to who made this notation or when it was made. In plaintiffs' answers to interrogatories it is stated this letter was written in 1974, not 1973. ■ On a motion for summary judgment, it is improper to resolve factual disputes. (*Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62]; *Anderson* v. *City of Thousand Oaks,* 65 Cal.App.3d 82, 87 [135 Cal.Rptr. 127].)

■ More fundamentally, to state a cause of action for intentional infliction of emotional distress the plaintiff is required to show *severe* emotional distress resulting from *outrageous* conduct on the part of the defendant. (*Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 394, 396-397 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) Both the intensity and duration of the emotional distress suffered must be considered in determining its severity. Severe emotional distress means "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 397.) ■ Whether the defendant's conduct was outrageous and whether the plaintiff's emotional distress was severe are generally questions of fact, and where, as here, the conduct complained of is continuing in nature encompassing a period of several years and the emotional distress alleged is also of a continuing nature, the point at which the defendant's conduct has become sufficiently outrageous and the plaintiff's emotional distress sufficiently severe for the plaintiff to state a cause of action will be questions of fact. Even if we knew the correct date of Mr. Murphy's letter, we cannot say as a matter of law that the conduct complained of at that time was sufficiently outrageous or that the emotional distress mentioned was sufficiently severe to compel the conclusion that plaintiffs' cause of action had then accrued.

Even if it should appear at trial that plaintiffs' cause of action for intentional infliction of emotional distress had accrued more than one year before this action was filed and that therefore recovery for all or part of their emotional distress on that theory is barred by the one-year statute, plaintiffs could nevertheless recover damages for their emotional distress on their causes of action for fraud or bad faith should they prevail on those causes of action. (*Schroeder* v. *Auto Driveaway Co.,* 11 Cal.3d 908, 916-917, 921 [114 Cal.Rptr. 622, 523 P.2d 662]; see *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 433.)

*Specification of Issues Without*
*Substantial Controversy*

Although the trial court did not reach Allstate's request for specification of issues without substantial controversy, at oral argument counsel for Allstate requested we consider those questions in the event we concluded full summary judgment was improper. We have no intention of usurping the function of the trial court. However, the answers to several questions raised by defendant's request for specification of issues without substantial controversy are implicit in what we have already said, and we deem it not inappropriate to make a few observations in the hope they may be of assistance to the court and counsel on remand.

Allstate's request that all of the issues in the first four causes of action be specified as without substantial controversy cannot be granted. As is apparent from the previous discussion, numerous disputed factual issues exist with respect to those causes of action. We have, of course, disposed of the contention that the fifth cause of action for intentional infliction of emotional distress is barred as a matter of law by the one-year statute of limitations. We are left then with Allstate's request for determinations that the appraisal award confirmed by the superior court "is valid and binding" and "is not subject to impeachment or attack, and that the proceedings were conducted in accordance with law and are valid in all respects" and that the total amount of loss compensable under the insurance policy is $20,569.42.

Taking the last item first, we think the language, "that the total amount of loss compensable under the insurance policy is $20,569.42" is a bit overbroad. It is true substantially that language except for the word "total" is found in the JUDGMENT CONFIRMING AWARD OF ARBITRATORS dated April 4, 1975, in Orange County Superior Court case No. 206984. Strictly speaking, however, the question determined by the appraisal award and properly before the court in the confirmation proceeding was the actual cash value of the loss from the destruction of or damage to the insured property caused by the fire on January 11, 1973. Thus, in the findings of fact and conclusions of law upon which the judgment was based, the court concluded: "Said sum [$20,569.42] constitutes the actual cash value of the loss as that term is defined by the contract of insurance between the parties and pursuant to the provisions of section 2071 of the Insurance Code."

The record indicates that the judgment confirming the appraisal award has become final and, assuming the court had both subject matter and in personam jurisdiction, that judgment will have the usual res judicata effects. (*Conner* v. *Dart Transportation Service,* 65 Cal.App.3d 320, 323 [135 Cal.Rptr. 259]; see generally, *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 et seq. [25 Cal.Rptr. 559, 375 P.2d 439]; *Clark* v. *Lesher,* 46 Cal.2d 874, 880-881 [299 P.2d 865]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 189-192, 197-201, pp. 3329-3332, 3335-3341.) The causes of action asserted in the instant action are, of course, not the same as that involved in the confirmation proceeding, so the judgment in the confirmation proceeding does not constitute a bar to the present action. (*Clark* v. *Lesher, supra,* 46 Cal.2d at p. 880; *Myers* v. *County of Orange,* 6 Cal.App.3d 626, 633 [86 Cal.Rptr. 198]; see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 190, p. 3331.) Under the doctrine of collateral estoppel, however, plaintiffs may be foreclosed from relitigating certain issues—those issues that were actually litigated and determined in the confirmation proceeding. (*Clark* v. *Lesher, supra,* 46 Cal.2d at pp. 880-881; *Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 P.2d 916]; see *Myers* v. *County of Orange, supra;* 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 197, 198, pp. 3335-3337.) The determination as to whether the identical issue was litigated in a prior action is not an easy one and generally requires factual proof. (*Myers* v. *County of Orange, supra;* see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 198-201, pp. 3336-3341.)

Presumably the issue Allstate contends has been conclusively litigated is that presented by plaintiffs' allegations that Allstate induced the appraiser appointed by plaintiffs to agree to Allstate's figures by promising that if he did, it would make payment immediately. (See fn. 4 and accompanying text and fn. 5, *ante.*) We are unable to say as a matter of law on the basis of what is before us that this issue was actually raised and litigated in the confirmation proceeding. It is undoubtedly true that the confirmation proceeding was brought under section 1285 et seq. of the Code of Civil Procedure. It is also true that the resisting party in such a proceeding may in response to the petition assert grounds for vacating the award including that the "award was procured by corruption, fraud or other undue means"; that there "was corruption in any of the arbitrators"; and that the "rights of such party were substantially prejudiced by misconduct of a neutral arbitrator." (Code Civ. Proc., § 1286.2, subds. (a), (b), (c).) It further appears that in its findings of fact the court found that the "parties actively participated in the appraisal proceedings, including the hearing"; that the "parties were fully and fairly heard by the

appraisers"; and that "[n]o rights of the parties have been prejudiced by the appraisal proceedings or award." However, the response filed by the Murphys in the proceeding, if any there was, is not before us, nor have we been presented with any declaration of anyone who attended the hearing concerning the issues actually litigated. It is entirely possible the Murphys did not assert in the confirmation proceeding any such inducement of their appraiser as is now claimed. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 197, p. 3336.)

We also observe that, as we understand it, in alleging their appraiser was induced to agree to Allstate's figures by Allstate's promise of immediate payment, plaintiffs are not attacking the finality or validity of the determination that $20,569.42 was the actual cash value of the fire loss, but are only attempting to demonstrate Allstate's bad faith by showing it made assurances of prompt payment and then failed to make prompt payment even after the amount of the loss was fixed. ██ A motion for specification of issues without substantial controversy is an inappropriate substitute for a motion *in limine* to exclude evidence, and we leave the question of the admissibility of such evidence if it is offered on this theory to determination by the trial court in proper proceedings at an appropriate time.

*Disposition*

The judgment is reversed.

McDaniel, J., and Morris, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 27, 1978.