RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0291p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

PALMER PARK SQUARE, LLC,

*Plaintiff-Appellant,*

*v.*

No. 17-1158

SCOTTSDALE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-11536—Nancy G. Edmunds, District Judge.

Argued: November 29, 2017

Decided and Filed: December 22, 2017

Before: GILMAN, SUTTON, and STRANCH, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Donald M. Fulkerson, Westland, Michigan, for Appellant. Hans H.J. Pijls,
DINSMORE & SHOHL, LLP, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** Donald M.
Fulkerson, Westland, Michigan, for Appellant. Hans H.J. Pijls, Julia T. Stuebing, DINSMORE
& SHOHL, LLP, Ann Arbor, Michigan, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Over four years after Palmer Park Square,
LLC incurred an insured loss, it brought a claim against Scottsdale Insurance Company for
"penalty interest" allegedly due on the untimely payment of the loss by Scottsdale. The district
court held that the penalty-interest claim arose "under the policy" and was thus barred by the

policy's two-year limitations provision.  It further held that a statutory provision providing for the tolling of limitations provisions in insurance contracts did not apply to policies issued by surplus-lines insurers like Scottsdale.  As a result, summary judgment was granted in Scottsdale's favor.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

Palmer owned a vacant apartment complex located at 843 Whitmore in Detroit, Michigan (the Property).  Scottsdale issued a commercial fire insurance policy to Palmer covering the Property for fire and other specified losses from November 8, 2011 through November 8, 2012 (the Policy).

The Property was burglarized and vandalized in February 2012, such losses being within the coverage of Scottsdale's fire insurance policy.  Palmer reported the loss to Scottsdale over a year and a half later, on October 22, 2013.  Scottsdale wrote to Palmer several weeks thereafter acknowledging that the purported loss occurred during the coverage period, explaining that it was investigating the claim, and reserving the right to assert defenses to coverage under the Policy.  The letter went on to explicitly state that Scottsdale was not denying Palmer's claim.

On November 27, 2013, Palmer sent Scottsdale an itemized Proof of Loss.  Scottsdale did not object to Palmer's Proof of Loss as inadequate.  Instead, it submitted a payment of $150,000 to Palmer on or about June 16, 2014, almost seven months after Palmer submitted its Proof of Loss.  This payment was made well outside of the period permitted for a "timely" payment under § 500.2836(2) of the Michigan Compiled Laws, which provides that "losses under any fire insurance policy shall be paid within 30 days after receipt of proof of the amount of loss."

Because the $150,000 payment was far less than the amount claimed, Palmer requested an appraisal under the Policy.  Scottsdale agreed to the appraisal and noted that the claim was still under investigation.

The appraisers concluded that Palmer's actual-cash-value loss was $1,642,796.76. Because coverage under the Policy was limited to $1,000,000, Scottsdale tendered two checks

over a period of several months that paid the balance of the appraisal award up to the Policy limit. Palmer then requested penalty interest for late payment of the claim under § 500.2006(4) of the Michigan Compiled Laws. Section 500.2006(4) states that "[i]f benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract." This penalty interest "must be paid in addition to and at the time of payment of the loss." *Id.*

Scottsdale rejected Palmer's request for penalty interest on October 26, 2015 because "all payments were timely made once the amounts owed were determined." On March 24, 2016, Palmer responded by filing a lawsuit in Michigan state court that sought penalty interest under § 500.2006(4). Scottsdale removed the case to federal court based on diversity jurisdiction. Following the close of discovery, Scottsdale moved for summary judgment, arguing that Palmer's claim was time-barred under the Policy. In relevant part, the Policy provides that "[n]o one may bring a legal action against [Scottsdale] *under this Coverage Part* unless . . . [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Emphasis added.) The district court agreed with Scottsdale's argument and granted it summary judgment. This timely appeal followed.

## II. ANALYSIS

### A.    Standard of review

We review de novo the district court's grant of summary judgment. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "must view all evidence in the light most favorable to the nonmoving party in making this determination." *Williams*, 847 F.3d at 391.

**B.     The district court erred in concluding that Palmer's claim for penalty interest was governed by the Policy's two-year limitations provision.**

Palmer filed its action for penalty interest over four years after the loss in question. Whether this filing was timely is an issue of first impression. We must thus predict how the Michigan Supreme Court would decide the issue. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012).

Scottsdale argues—and the district court agreed—that Palmer's claim is one arising "under the Policy," and thus the Policy's two-year-limitations provision applies. Palmer, on the other hand, contends that because the claim is based on a Michigan statute, it does not arise under the Policy, meaning that the Policy's contractual limitations provision does not apply. The first question that we must consider, then, is whether the penalty-interest claim is one arising "under" the Policy. (We note that the Policy actually restricts application of its limitations provision to actions arising under the "Coverage Part" of the Policy, an even narrower delineation. But because Scottsdale and the district court focused on whether the action arose "under the Policy," and because we do not find the distinction material in this case, we will similarly refer to whether the claim arises "under the Policy.")

### 1. *Applicable Michigan caselaw*

The Policy does not contain any requirement that a covered loss be paid within a certain timeframe. Nor does it contain any provision addressing "untimely" loss payments. These provisions are found only in the relevant Michigan statutes. Scottsdale argues, however, that Palmer's penalty-interest claim is not "independent" from the underlying contract claim for payment of the insured loss and thus derivatively arises under the Policy. To support its argument, Scottsdale relies on isolated statements found in *Hearn v. Rickenbacker*, 400 N.W.2d 90 (Mich. 1987).

But *Hearn* does not support Scottsdale's position. *Hearn* addressed the question of whether the plaintiff's claims for fraud and negligence relating to a fire insurance policy were governed by that policy's one-year-limitations provision. *Id.* at 92. The limitations provision explicitly applied to any "suit or action *on this policy*." *Id.* (emphasis in original). This caused

the Michigan Supreme Court to focus on whether the fraud and negligence claims amounted to actions "on this policy." *Id.* It held that they did not. *Id.* at 94.

The Michigan Supreme Court started its analysis by noting that the policy's limitations provision should apply "where a plaintiff's claim is truly contractual in nature." *Id.* at 92. When determining if a claim is truly contractual in nature, a court should focus on the "nature of the right sued upon" rather than "the form of [the] action or the relief demanded." *Id.* (internal quotations marks omitted) (quoting *Richardson v. Allstate Inc. Co.*, 172 Cal. Rptr. 423, 426 (Cal. Ct. App. 1981)). And "[i]t is important to distinguish an action 'arising out of the contractual relationship' and one 'on the policy.'" *Id.* at 93 (quoting *Murphy v. Allstate Ins. Co.*, 147 Cal. Rptr. 565, 574 (Cal. Ct. App. 1978)). Where the gravamen of the claim is a "continuing refusal" to honor a claim of loss or otherwise fulfill obligations under the contract, the claim is generally one "on the policy." *Id.* (internal quotation marks omitted) (quoting *McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 612 (10th Cir. 1983)). But where "the liability arises from the breach of [a] positive legal duty imposed by law due to the relationships of the parties," the claim is independent of the contract. *Id.* at 92 (internal quotations marks omitted) (quoting *Hoskins v. Aetna Life Ins*. Co., 452 N.E.2d 1315, 1320 (Ohio 1983)).

As the district court noted, *Hearn* distinguished between allegations of "negligence associated with nonpayment of [a] claim" and allegations of negligence related to "the handling of [] premiums and policy purchase generally, at a time prior to the . . . loss." *Id.* at 93. Although the former would be an action under the policy, the latter was not. *Id.* But by using this distinction, *Hearn* simply makes clear that allegations that a defendant negligently failed to pay a claim and thus fulfill its contractual obligations is really a claim for breach of contract— unequivocally a claim "on the policy."

Palmer, however, is not asserting a claim associated with *nonpayment* of a loss under the terms of the policy. It is instead asserting a claim associated with the *payment* of the claim. Palmer, in other words, does not contend that Scottsdale failed to pay the loss or otherwise breached Scottsdale's obligations under the Policy. To the contrary, Palmer argues that Scottsdale breached a separate statutory obligation to pay losses owed under the Policy *in a*

*timely manner.* *Hearn* was concerned with contract claims that were simply rebranded as tort claims to avoid the contractual limitations period. No such concern is implicated in this case.

Scottsdale also emphasizes that the holding in *Hearn* was based in part on a finding that the "negligence and fraud claims were not associated with payment of the [loss] claim but with breach of duties existing with respect to issues relating to policy procurement prior to the loss." *Hearn* did in fact note that the actions underlying the fraud and negligence claims occurred prior to the fire loss. *Hearn*, 400 N.W.2d at 93. But that does not mean that a claim arising simultaneously with a breach-of-contract claim cannot be independent from the contract claim.

Scottsdale nevertheless contends that, according to the language from *Hearn* discussed above, the test for determining whether Palmer's claim is one under the Policy is "whether [the] penalty interest is associated with the payment of the underlying loss." But, again, *Hearn* makes clear that the key consideration is not one of "association," but is instead the nature of the wrong to be redressed. *See Hearn*, 400 N.W.2d at 94 (explaining that although "mere allegations of failure to discharge obligations under the insurance contract" would not constitute a claim independent from the policy, a claim for "the breach of separate and independent duties" does, even if the claim evolved from the contractual relationship). In fact, *Hearn* forecloses the test proposed by Scottsdale, noting that "a lawsuit seek[ing] to recover a loss that was covered by an insurance policy" could still be considered an independent claim not on the policy as long as it was based on the breach of a legal duty separate from any purely contractual duty. *Id.*

Applying the principles from *Hearn* to the facts of this case, we conclude that Palmer's penalty-interest claim does not arise from any legal duty created by the Policy. Rather, it arises from an obligation created by § 500.2006(4). Scottsdale disagrees with this conclusion, emphasizing that this statutory duty to pay penalty interest does not arise unless there is a contractual obligation to pay a loss covered by the Policy. But "[t]o conclude . . . that because the dispute . . . would not have arisen in the absence of the policy, the action must be 'on the policy' . . . , would render the phrase . . . meaningless." *Id.* (internal quotation marks omitted) (quoting *Picus v. Copus*, 379 N.W.2d 341, 344 (Wis. Ct. App. 1985)). In other words, "[i]f the limitations provision in question were intended to cover all suits 'for the recovery of any claim,' then the preceding words, 'on this policy,' would have been superfluous." *Id.*

*Hearn* further explains:

> A mere contract obligation may establish no relation out of which a separate and specific legal duty arises, and yet extraneous circumstances and conditions in connection with it may establish such a relation as to make its performance a legal duty, and its omission a wrong to be redressed. The duty and the tort grow out of the entire range of facts of which the breach of the contract was but one.

*Id.* (internal quotation marks omitted) (quoting *Oliver v. Perkins*, 52 N.W. 609, 612 (Mich. 1892)). So the fact that Scottsdale's obligation to *timely* pay the insured loss would not have arisen but for the obligation to pay the loss in the first place does not mean that the claim for a violation of § 500.2006(4) is a claim under the Policy.

Scottsdale's obligation to pay the burglary and vandalism loss is simply a precondition necessary for Palmer's penalty-interest claim. And although *Hearn* specifically addressed obligations arising under tort law, we do not find any reason why its analysis would not apply equally to duties arising under a statute. Whether arising under tort law or statute, the obligation here does not arise under the terms of the Policy.

In sum, Palmer does not allege that Scottsdale has breached the Policy agreement, nor has Palmer brought a breach-of-contract claim. Scottsdale has in fact paid the insured loss up to the limit of its liability under the Policy and has thus fulfilled its contractual obligations. Because the Policy contains no time limit for paying a loss, Palmer has no unvindicated rights under the Policy and therefore no claim "under the policy" to assert.

### 2. *The language of § 500.2006(4) of the Michigan Compiled Laws*

Scottsdale next argues that the language of § 500.2006(4) unequivocally links the penalty-interest claim to the Policy. Again, the section provides as follows:

> If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract.

Scottsdale emphasizes the statute's reference to an insured entitled to benefits "under" the contract. But this language simply identifies *who* may recover penalty-interest; it does not identify the penalty-interest claim as one arising under the Policy.

Scottsdale also argues that § 500.2006's language establishes that an insurer's obligation to timely pay a loss arises only if it has an obligation to pay a loss under the Policy's contractual terms. We agree, but this does not mean that the penalty-interest claim is a claim *under the Policy*. *See Hearn*, 400 N.W.2d at 92 ("Where a contractual limitation refers only to actions upon a policy, it does not necessarily refer to different or collateral actions involving, in some measure, the policy proceeds.") (citation omitted).

Scottsdale cites several cases holding that an insured may not assert a claim for punitive damages, penalty interest, or statutory appraisal related to the payment of a loss under an insurance policy when a limitations provision bars a breach-of-contract claim under that policy. *See Musleh v. State Farm Fire & Cas. Co.*, No. 12-13843, 2012 WL 5493588, at *5 (E.D. Mich. Nov. 13, 2012) (holding that where the insurer did not owe the plaintiffs any coverage under the policy because any breach-of-contract claim to obtain payment was time-barred, the plaintiffs could not bring a claim for statutory appraisal of their loss); *Livonia Volkswagen, Inc. v. Universal Underwriters Grp.*, No. 06-13619, 2008 WL 880189, at *7, 9 (E.D. Mich. Mar. 31, 2008) (dismissing claims for breach of contract and penalty interest where the breach-of-contract claim was brought outside the contractual limitations period contained in the policy); *Doeren Mayhew & Co., P.C. v. CPA Mut. Ins. Co. of Am. Risk Retention Grp.*, No. 05-71782, 2007 WL 118939, at *8 (E.D. Mich. Jan. 10, 2007) (holding that a plaintiff's claim for penalty interest failed because the plaintiff was not entitled to payment for its loss under the policy); *Florsheim v. Travelers Indem. Co. of Illinois*, 393 N.E.2d 1223, 1233 (Ill. App. Ct. 1979) (holding that a plaintiff could not bring a claim for punitive damages for an insurer's allegedly wrongful denial of liability where the contractual limitations period prevented that plaintiff from recovering actual damages on the policy).

But these cases simply mirror the language of § 500.2006 itself in establishing that an insured may obtain penalty interest only when it is entitled to a recovery under the policy for an insured loss. So if the insured has not shown and cannot show that it was entitled to payment for an insured loss because the claim under the policy is time-barred, then the insured is unable to establish that it is owed penalty interest.

As *Florsheim* explains:

> Finally, the plaintiff contends that the trial court erred in dismissing the claim for punitive damages. It is true that the contractual limitation period generally does not apply to different or collateral actions involving, in some measure, the policy proceeds or growing out of the insurer's duties to the insured. However, Illinois[,] like most states, does not recognize a cause of action for punitive damages alone; the plaintiff can only be awarded punitive damages where actual damage is shown. The plaintiff here cannot recover actual damages since she cannot now recover on the policy and she has not claimed any other injury which might give rise to a claim for compensatory damages. Absent such a claim, the claim for punitive damages had to fall when the claim for actual damages (the amount of the loss) fell.

*Florsheim*, 393 N.E.2d at 1233 (internal citations omitted). The claim for punitive damages in *Florsheim* thus failed not because it was brought outside of the contractual limitations period, but because no breach-of-contract claim was brought within the limitations period. Without being entitled to payment under the policy, the plaintiff in *Florsheim* had no claim for punitive damages.

In contrast, the parties here do not dispute that Palmer was entitled to payment of its loss under the Policy, and Scottsdale has paid that loss. This leaves no doubt that Scottsdale had an obligation to timely make that payment under § 500.2006(4). Scottsdale failed to do so.

### 3. *Pleading requirements for § 500.2006(4) of the Michigan Compiled Laws*

Scottsdale next contends that claims for penalty interest under § 500.2006(4) do not need to be pleaded in order for penalty interest to be recovered. As a result, Scottsdale argues, such a claim cannot be an independent cause of action and must be considered a claim under the Policy. To support the proposition that penalty-interest claims need not be pleaded, Scottsdale cites two cases.

The first case, *Hastings Mutual Insurance Co. v. Mosher Dolan Cataldo & Kelly, Inc.*, No. 296791, 2013 WL 1149790 (Mich. Ct. App. Feb. 14, 2013), is an unpublished opinion that is not "precedentially binding" pursuant to the Michigan Court Rules. Mich. Court. R. 7.215(C)(1). *Hastings* held that a claimant need not plead a claim for penalty interest in order to recover it, stating that "[t]he omission of a requirement for the claimant to specially plead

entitlement to the penalty is consistent with the general principles that there is no private cause of action under [§ 500.2006(4)], and the purpose of the statute is to penalize dilatory insurers rather than to compensate claimants." *Id.* at \*19. But *Hastings*'s conclusion that there is no cause of action for penalty interest is flawed.

*Hastings* notes that Michigan courts "ha[ve] held several times that there is no private cause of action for damages under [§] 500.2006," *id.* at \*18, but neither of the cases cited supports that overbroad assertion. *See Isagholian v. Transamerica Ins. Corp.*, 527 N.W.2d 13, 17 (Mich. Ct. App. 1994) ("We note that, *in general*, a violation of the Uniform Trade Practices Act, M.C.L. § 500.2001 *et seq.;* M.S.A. § 24.12001 *et seq.,* does not give rise to a private cause of action." (emphasis added)); *Young v. Michigan Mut. Ins. Co.*, 362 N.W.2d 844, 847 (Mich. Ct. App. 1984) ("There is no implied private cause of action *in tort* for violation of M.C.L. § 500.2006." (emphasis added)).

And in reaching its holding, *Hastings* acknowledged the Michigan Supreme Court's discussion of § 500.2006(4) in *Yaldo v. North Pointe Insurance Co.*, 578 N.W.2d 274, 277 (Mich. 1998), but dismissed that discussion as dicta. *Hastings*, 2013 WL 1149790, at \*19. *Yaldo* considered whether a plaintiff was entitled to prejudgment interest for a claim under an insurance policy pursuant to § 600.6013(6). This section provides that "if a judgment is rendered on a written instrument, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually." Mich. Comp. Laws § 600.6013(5). After concluding that the plaintiff was entitled to interest under this provision, the Court identified § 500.2006(4) as an alternative source through which the plaintiff could have obtained 12% interest. *Yaldo*, 578 N.W.2d at 277. The Court particularly noted that the "plaintiff could have *filed a claim* under M.C.L. § 500.2006(4)." *Id.* (emphasis added). This statement contradicts *Hastings*'s conclusion that § 500.2006(4) does not create a private cause of action.

*Yaldo* also noted that there might be an overlap between the two interest provisions in certain cases, but that § 500.2006(4) is distinct because it "allows an insured to recover twelve percent interest from its insurer where no complaint has been filed to force payment. It applies when the insurance company is dilatory in making timely payments to the insured." *Id.* This

gives further support to the conclusion that § 500.2006(4) addresses a wrong independent from the insurance policy—dilatory conduct—that is beyond a failure to comply with contractual obligations.

The second case cited by Scottsdale, *Federal-Mogul Corp. v. Insurance Co. of State of Pennsylvania*, No. 12-12005, 2017 WL 2274489, at *5 (E.D. Mich. May 25, 2017), relies on *Hastings* and thus errs for the same reasons. Moreover, *Federal Mogul* noted that Rule 54 of the Federal Rules of Civil Procedure allows a plaintiff to recover penalty interest under § 500.2006(4) without explicitly pleading a claim for that relief. *Id.* at *6; Fed. R. Civ. P. 54(c) (providing that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). *Federal Mogul* thus had multiple distinct bases for its conclusion that a claim for penalty interest need not be pleaded, undermining Scottsdale's argument that there is no independent cause of action for penalty interest under § 500.2006(4).

In fact, the clear weight of Michigan authority allows an insured to collect penalty interest under § 500.2006(4), contrary to the holding in *Hastings*. *See Young*, 362 N.W.2d at 846–47 ("This Court has held that a private party may directly recover the interest penalty in an action against the insurer."); 1981-1982 Mich. Op. Att'y Gen. 326 (1981) (opining that violations of § 500.2006 "are defined to be unfair trade practices and give the insured a right apart from the provisions of the insurance contract"); *Barker v. Underwriters at Lloyd's, London*, 564 F. Supp. 352, 355 (E.D. Mich. 1983) ("The Court finds that plaintiffs may assert a private cause of action to recover the interest penalty in section 2006 of the UTPA since that section provides that the insurer pay the interest penalty to the insured on claims not paid on a timely basis."). Scottsdale's contention that there is no independent cause of action under § 500.2006 is thus without merit.

C.     **The district court erred in concluding that Michigan's general six-year statute of limitations does not govern Palmer's penalty-interest claim.**

We now turn to the applicable limitations period. The parties agree that there is no statutory provision that specifically provides a limitations period for bringing a claim for penalty interest under § 500.2006(4). Palmer therefore argues that Michigan's catch-all, six-year period

of limitations set forth in § 600.5813 of the Michigan Compiled Laws should apply. This section states: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." Scottsdale, on the other hand, argues that the district court properly concluded that this catch-all provision cannot apply because a claim for penalty interest under § 500.2006(4) is not a "personal action." Much of Scottsdale's reasoning on this issue overlaps with its argument for why a penalty-interest claim arises under the Policy. We have no need to readdress those arguments here.

The district court did not provide a definition for the term "personal action." It simply reasoned that because "[t]here is no implied private cause of action *in tort* for violation of M.C.L. § 500.2006," no "personal action" exists under that section. *See Young*, 362 N.W.2d at 847 (emphasis added). The court then noted, without further explanation, that "penalty interest does not satisfy the 'personal action' requirement under § 600.5813."

But "the limitations period for an action does not hinge on the type of relief sought." *Dep't of Envtl. Quality v. Gomez*, 896 N.W.2d 39, 50 (Mich. Ct. App. 2016); *accord* Mich. Comp. Laws § 600.5815 ("The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought."). Accordingly, *Gomez* applied § 600.5813's catch-all, six-year limitations period to an action for civil fines and the restoration of wetland areas. *Gomez*, 896 N.W.2d at 50–51. And in *DiPonio Construction Co. v. Rosati Masonry Co.*, 631 N.W.2d 59, 65–66 (Mich. Ct. App. 2001), the Michigan Court of Appeals similarly held that the residual six-year statute of limitations in § 600.5813 applies to statutory causes of action, including those for civil fines. In reaching that conclusion, *DiPonio* contrasted actions for statutory violations with actions to redress injuries resulting from traditional torts, noting that the limitations periods set out in § 600.5805 apply to the latter. *Id.*

Scottsdale defends the district court's conclusion by citing a nonmajority opinion in *Borden, Inc. v. State Department of Treasury, Corp. Franchise Fee Division*, 218 N.W.2d 667 (Mich. 1974). *Borden*, it argues, shows that a "personal action" is limited to an action to recover "damages for the commission of an injury to [a] person or property." We find this argument unavailing because the Michigan Supreme Court in *Borden* split three–three so the opinion is not binding precedent. *See Dean v. Chrysler Corp.*, 455 N.W.2d 699, 701 n.7 (Mich. 1990)

("A 'majority of the Court must agree on a ground for decision in order to make that binding precedent for future decisions.'" (quoting *People v. Anderson*, 205 N.W.2d 461, 467 (Mich. 1973))).

Moreover, Scottsdale's argument is weakened by reference to § 600.5805 of the Michigan Compiled Laws, which provides specific limitations periods for actions redressing injuries to persons or property, including a catch-all provision in subsection 10. *See* Mich. Comp. Laws § 600.5805(10) ("Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."); *DiPonio*, 631 N.W.2d at 66 ("[I]f plaintiff pled malpractice or some other traditional, common-law tort, then we must apply § 5805. Otherwise, § 5813 would be appropriate." (quotation marks omitted)). If a "personal action" in § 600.5813 were limited only to actions to recover damages related to injuries to persons or property, these two provisions would be redundant.

Scottsdale's ultimate argument on this issue is that Palmer has failed to show that Mich. Comp. Laws § 600.5813 applies to actions for penalty interest. But Scottsdale has provided no reason for why the statute should not so apply. The language of the section is broad, covering "[a]ll other personal actions." And the Michigan legislature meant it to be a catch-all provision that applies regardless of the type of relief sought. *See* Mich. Comp. Laws § 600.5815 ("The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought.").

The parties also dispute the date that a claim for penalty interest accrues. Palmer argues that, pursuant to the language of § 500.2006(4), a penalty-interest claim accrues "at the time of payment of the loss." Because Scottsdale believes that the penalty-interest claim is inextricably connected with the Policy, it contends that any claim for penalty interest would accrue on the actual date of loss. But we need not decide this question because, even if the penalty-interest claim accrued at the time of the actual loss, the claim would still have been filed well within the six-year limitations period set out in § 600.5813.

**D.      Additional arguments**

Palmer argues in the alternative that, even if the two-year contractual limitations period applies to its claim for penalty interest, its claim is timely because the period was tolled under § 500.2833(1)(q) of the Michigan Compiled Laws.  The district court disagreed, concluding that surplus-lines insurers like Scottsdale are "not subject to the general provisions of Michigan's Insurance Code," including § 500.2833(1)(q).  (In contrast to the district court, Scottsdale contends more narrowly that surplus-lines insurers are exempted from only the substantive requirements of § 500.2833(1)).  We need not reach this alternative argument because our conclusion that Palmer's claim is a personal action governed by the six-year limitations period found in § 600.5813 is dispositive of the appeal.  For the same reasons, we have no need to resolve Palmer's argument that Scottsdale waived any limitations defense.

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.